This is the last day of our panel sitting here in Atlanta, and Judge Legault and I are very happy and very thankful to have with us, as we did a couple of days ago, Judge Eileen Cannon from the Southern District of Florida. She is a graduate of Michigan Law School and has been on the bench for about three years, so we're very, very glad to have her and thank her for helping us in our work. Thank you. You know the lighting system. When the yellow light goes on, that means that your time is drawing to a close, so you can begin to wrap up. If we take you beyond the red light, don't worry about it. Just keep on going. We have two cases this morning, and the first one is No. 22-11207, Sheldon Turner v. the U.S. Attorney General Daniel Bushell v. the U.S. Attorney General Sheldon Turner. It's kind of cliché. Every lawyer, I'm sure, gets up here and says this is a simple case, but this case really is a simple case. It comes down to 21 words. It really comes down to separation of the parents. And to interpret this statutory phrase like every other statute, we follow the ordinary meaning rule. We look to the ordinary meaning of the words, and we follow rules of grammar. That's what Scalia and Garner tell us as quoted by the Supreme Court in 2019, as well as many cases of this Court as well. So if we look, if we follow grammar in interpreting this, these seven words, the next revoked conclusion is that Sheldon Turner obtained derivative citizenship when his mother naturalized. Can I ask you, I'm going to try to put your argument in sort of my summary, and you tell me whether you think it's accurate or not. Your position, I think, is that the plain ordinary and literal meaning of that phrase means separation, divorce, dissolution of marriage at any time before the naturalization of a parent. Yes. And although that reading may not make the most policy sense, it is not absurd. And therefore, we need to follow the plain language of the statute. Yes. Okay. May I ask you a question before you continue? Of course you can. It's unclear to me from the record, it seemed to me that you really didn't stipulate to the fact that there was a remarriage. That there was a remarriage? You did not stipulate to the fact that there was a remarriage. I did not. Right. And so when I look at the record, and I just want to confirm that this is the only thing in the record, there was a petition, not a petition, but it's like there's a dissolution of marriage, and that's certified. There's a certification of his birth certificate. But the remarriage certificate, that's not certified. Correct. But there's also not a remarriage certificate. Well, I know, but it's like what is allegedly a certificate or a notice that shows that these two individuals were married? Yeah, it's an entry in what purports to be a marriage register that lists a lot of different names, including theirs. But there was no stipulation, and there's nothing certified in the record, and there was, so really, truly, we have no evidence of that. That's our position, yes. Well, tell me how the proceedings went before the immigration judge then. I mean, if I took it from the initial part of your brief that, at least the front part of the brief, that you weren't contesting the sequence of events, not only the timeline, but what events were material. But now you're, in answer to Judge Lagoa's question, you're suggesting that there's something that wasn't proven or established? Well, I wouldn't say it's our point on appeal. That's not our focus on appeal, is not the sufficiency of the evidence of the remarriage. Our position is whether or not there was a citizenship. Right. I just wanted to ask a question that, from my reading of the record, that you had not stipulated to that, and that the evidence that came in, or that the immigration judge accepted over objection, was not certified. Yes, that's my point. So on the legal question, I understand you want us to draw meaning from the use of the present perfect tense. You agree, though, that right in isolation, it can either mean a reference to something that occurred in the indefinite past or continuing to the present. So why wouldn't we, in this statutory context present here, adopt the meaning that touches the present tense, given the overall structure of the statute as it's positioned? Well, I have two answers to that question, Judge Cannon. Number one, I would say it's sort of, I would put it in the opposite sense. Past perfect can mean, as a general matter, either something that occurred in the indefinite past or something that's continuing to the present. So therefore, the plain meaning interpretation is that it means both. Okay, so, but nor is there anything that indicates it has to be something that occurred at one time in the past without pulling in the present. Well, I would say that there sort of is, and that is because it's, there's some discussion in the government's brief, and we discuss it in our reply brief, where the government raised some, like a dictionary definition of present perfect continuing. And the present perfect continuing, in general, is going to be has been followed by an ing verb. We don't say that a legal, the way that this, the most natural reading of this phrase is that it occurred in the past. Not that it necessarily, the separation ended. It doesn't say anything about whether the separation ended. It just says there has been a legal separation. A legal separation occurs at a specific point in time when a judge enters an order. But wouldn't we have to view that in the context of the condition, which materializes being the point of naturalization? So when you take that has been language tied together with the condition at issue, which is the naturalization, why doesn't that take us to the present tense version of the has been construction? Well, I think that you asked the question, not necessarily at the moment of naturalization, but we can ask it here. We can say at the moment of naturalization, was it true that there had been a legal separation of his parents? And the answer is there was. The question is not, the phraseology of the provision is not when there is a legal separation, it's when there has been a legal separation. So if you ask the question, were they legally separated at the moment that the naturalization occurred? The answer is no, according to the, what the immigration judge said. But that's not what the provision says. What the provision says is there has been a legal separation. And the meaning of those words are fulfilled in his situation. If you say, had there been a legal separation at the moment of naturalization? There sure had. There had been a legal separation. Whether or not that may have ended, there had been a legal separation. But you're saying had been. Here, I'm reading it together. The naturalization of the parents when there has been a legal separation of the parents. And then you're looking again at the fulfillment of that condition, which is the naturalization. So why wouldn't the most natural meaning require us to ask whether at the time of naturalization, the parents were legally separated? Because that's, the statute doesn't say were legally separated. It could have said that. That would have been, that would have answered the question in the government's favor if it would have said the parents are legally separated. But it didn't use that phraseology. It said if there has been a legal separation. And I think that, you know, his case is a pretty, but. To try to get back to Judge Cannon's question about the structure of the statute as a whole, if the parents divorce and then remarry, aren't there, aren't they back in a position where the initial clause of the statute requires both of them to naturalize? I don't think so. Because I think that once you're, you're the parents legally separated, you qualify for that subsection 3. Right. I mean, I take your point and I understand what you're saying and what the BIA said, that literally you've got a strong case. I understand that. But if you're thinking of it from a structure standpoint, if you look at the relevant event, the relevant event is the naturalization of the mother, right? At that point, she's married. So why doesn't subsection 1 kick in? Well, it could. But subsection 1 is stated, the separation, the separating word between subsection 1 and subsection 3 is or. So you qualify, you derive derivative citizenship if you fulfill the conditions of 1, which would be both parents getting married, or if you fulfilled the conditions of 2, or if you fulfilled the conditions of 3. So he may not have satisfied 1, but it's 1 or 3. And he fulfilled 3. They're not exclusive to each other. Exactly, yes. They're stated in the alternative to each other. They're separated by or, not and. Now, for better or worse, there's, in doing some research on this, it appears that the INS, the old INS, provided an opinion letter back in 2001 in which it took the same position in a footnote. Are you familiar with that opinion letter? I'm not. So let me give you the, you and Mr. Robbins, the citation to it. And if you could both within 14 days file supplemental letter briefs, not to exceed 7 pages, on the effect of any of this opinion letter. I don't, personally, I don't think it's binding, but I want to know what you think it adds to the calculus, if anything. The citation is 2001, Westlaw, 1333885, Interpretation of Derivation of Citizenship. So it doesn't say who requested the letter or under what circumstances it was provided, at least not in the Westlaw document. And there are citations to a couple of unreported petitions that apparently were adjudicated. And I don't know if it refers to adjudications in court or just at the agency level. It just has two petitions. And that's what it cites for the authority that in your situation, the situation we have here, you don't get derivative citizenship, but there's no further explanation. Okay? Okay. My time has expired. Yep. You've saved all your time for rebuttal. Thank you. Thank you very much. May it please the Court. My name is Jonathan Robbins, and I'm here on behalf of Merrick Garland, the Attorney General. A good morning to everyone. As you've just discussed with my colleague in some detail, the primary question before the Court today is one of statutory construction. The Board in this case interpreted the plain meaning of the statute at former Section 321A of the Immigration and Nationality Act, specifically under Clause 3, interpreted the legal separation provision to be a continuing requirement rather than as petitioner advocates for a single moment in time requirement. Now, as the Board explained, if you look at the language in a vacuum, the petitioner has a pretty strong case. They said that position had some force. But when you take into account the broader statutory scheme and the context of the statute, his position loses that force. And the Board specifically explained that a proper plain meaning analysis of the statute requires it to consider the context as well as just simply the language in a vacuum. And when you look at the — yes, Your Honor? I'm going to ask you a twist on the facts here to see where the statutory analysis leads you. Okay. Same exact facts that are here, okay? But after naturalization by the mother, the parents who had remarried divorce again at a time when the child is still a minor. What's the result? I think that child would still derive citizenship because the requirement is that all the conditions have to be met simultaneously at the time of the naturalization. But at the time of the naturalization, the parents were married. They divorced after. Oh, oh, oh, I'm sorry. Same exact facts here, except that the mother obtains naturalization when they are remarried, right? Right. And while the child is still a minor, they divorce for a second time. If the naturalization occurs at the time that the child is — well — And the child is still a minor. So the child is 10. The child is 10. They remarry. When the child is 13, the mother but not the father obtains naturalization. Okay? Two years later, while the child is still a minor and now 15, the parents who had remarried divorce again. Does the child get derivative citizenship? Assuming that the naturalized parent has legal custody of the child, I think they would derive citizenship because all three conditions would be met simultaneously. Or they met if they were married at the time when the parent who had legal custody was naturalized. I think the board actually addressed this in its precedential decisions in Matter of Bears and Matter of Douglas where it talked about that the timing of the custody doesn't matter, or the timing of the separation doesn't matter. That as long as all the conditions are met simultaneously, then the child can — Because in my hypothetical, because when the mother gains naturalization, they're remarried. So it doesn't happen simultaneously. Right, but once the parents divorce in that situation, the mother is presumably still naturalized. Yes. So the naturalization condition has been met. It was met here. Right. And the other conditions would be that the child's under 18. That would also be met. That was met here, too? Right. And if the parents are divorced, then the child could derive through the single-parent provision of the statute. It seems to me that if all the conditions are met prior to the child's 18th birthday, then the child can derive citizenship. And what's the key event? The naturalization of the mother? Yes. But that's not only the key event, because you just said that in my hypothetical, a post-naturalization divorce still provides citizenship derivatively. Well, I think the Board's decisions in Matter of Douglas and Matter of Baird are not directly on point, but they talk about the timing, and they say — I mean, the timing is all messed up. Well, if you agree that that hypothetical grants derivative citizenship, not everything is happening simultaneously. It may still be that you're right, that you can squeeze out those two things and come to different results, but it's not because they're simultaneous. They're all occurring at different times. And a has-been is a future has-been. Well, that hypothetical has not yet been addressed specifically by the Board, so it's possible — I know. Even this one hasn't been addressed. I'm trying to figure out, if we lay out a principle, how does that principle play out in other scenarios? And so if you're telling me that simultaneity is the key, then that hypothetical presents a problem for the principle of law that you want us to adopt, I think. Now, the statute changed, so this is — the statute changed, so this statutory language is very limited for people going forward. That's correct. In 2000, Congress passed the Child Citizenship Act, which removed the legal separation requirement from the statute. But the reason it matters not only to Mr. Turner and to the government, of course — I mean, nothing addresses this particular situation, but if you look at the reported cases, there are like two dozen cases involving the application of a repealed statute because the relevant time periods were when the statute was in place. So it may matter how we interpret this thing going forward for a number of years. It will matter to a great deal of people. A lot of people are in Petitioner's Aid group where this provision would still apply. We do litigate it relatively often. But in terms of the statutory scheme as a whole with respect to the application to the petitioner's facts, the — I think the Board did a pretty decent job of explaining why the petitioner's interpretation would really run counter to what Congress was attempting to achieve when it enacted this legislation. All of the circuit courts that have addressed this statute, albeit not directly on the legal separation point, have all agreed about what Congress was trying to do with this statute. And, Your Honor, you mentioned this during the opening presentation. The petitioner's parents were married at the time of the naturalization. Well, let me ask you about that because I have my doubts, or at least you need to convince me, because the evidence that was introduced, and this was from the immigration judge, the court finds that the respondent's biological parents, Desmond Turner and Rosalyn Turner, remarried in Jamaica on August 3, 1994, and this is based on Exhibit No. 4, the marriage certificate. Yes. Well, the death certificate of the father, that's certified. The birth certificate is certified. You even have the — there's other documents that are certified. But Exhibit 4, which purports to be this marriage certificate, is not certified. I have no idea where this came from. Well, Your Honor, the — in theory, if petitioner — the only evidence we have in the — At the hearing below. It's not something he really pushed before the board on appeal to say that the immigration judge had erred in finding that there had been a marriage. Now, it's not technically something that has to be — That's not necessarily true because he did make that argument below that there was not proof that they had been remarried, and Mr. Turner testified that he didn't even know that his parents had remarried. Well, in order to warrant a transfer to district court, the individual has to create a genuine issue of material fact, and the only evidence in the record shows that there was a marriage. Now, it may not have been certified, but it does — Well, that's not true because Mr. Turner testified that he had no knowledge that his parents had remarried. He had never gone back to Jamaica. He didn't know anything about it. But he didn't deny that the marriage had taken place. So, in other words, he didn't rebut that there had been a marriage. He couldn't deny it because he didn't know about it. Well, he said he didn't know about it, but he didn't say that he didn't know that it had occurred either. There wasn't evidence one way or the other. And in order to create a genuine issue of material fact, he would have had to assert that there was no marriage. So just simply not knowing is not enough to rebut the evidence in the record that demonstrates that there is a marriage. Now, in theory, if he were to come up with some sort of evidence that shows that there's a genuine issue of material fact with respect to the marriage, he could move for a transfer to district court, and the district court could figure that out. This is Mr. Budgey to the judge. We're denying that Respondent's parents remarried in 1994 in Jamaica. Is that not a denial? But what he testified to was that he did not know when he actually testified. Lawyer, that was not Mr. Turner. The lawyer objected and denied. There was no stipulation as to that fact. So, therefore, did the government not have a burden then to prove that? Well, the government submitted evidence of the marriage. An uncertified copy. It may have been uncertified, Your Honor, but it was at least some evidence tending to show a marriage, and there was no evidence submitted to rebut that. Now, his counsel may have denied the marriage, but a statement of counsel is not evidence. There has to be evidence in order to create a genuine issue of material fact, and the petitioner did not produce any evidence to rebut the notion that there had been a marriage. Now, if he does, he could. Yes. The number of cases which talk about congressional purpose and how this statute was enacted and why it was structured the way that it was, where do those courts get congressional purpose from? Well, I think all of the courts acknowledge that the legislative history is sparse on this, particularly the Fifth Circuit. And so what they were able to suss out from the legislative history is that there's certainly an express purpose in preserving the family unit. So there is a purpose in making sure that the child stays with the family unit of the naturalized parent if the noncitizen parent is out of the picture. One of the things, I think it's the Fifth Circuit's body of case law that has the most on this. A lot's been made of the fact that this statute has been repealed, but not a lot has been discussed about the statute that preceded this statute. Prior to this version of the statute, a noncitizen child could derive citizenship if only one of the parents in a married couple naturalized, so long as the child had been residing in the United States for five years. And the Fifth Circuit actually talks about this, that Congress basically wanted to make things stricter for children of single parents in these situations. One of the reasons was because of the problems created with dual citizenship. Congress was not happy that there were people who were residing in foreign countries who were basically availing themselves of protection in the United States. And so they explained that one of the Congressional objectives in passing this version of the statute, the one that's at issue today, was that it wanted to sort of eliminate that problem. When was the former version, the one that was a little more broad and a little more liberal in terms of the way that it treated— I think that was prior to 1940. I'm sorry? I think that was prior to 1940. So that was a pretty old provision. So what Congress was trying to do in this provision was to make things stricter for individuals to make sure that the child actually had a real interest in the United States. And so that's why you can see when Congress is setting up this statute, you can see that it's limiting single-parent derivative citizenship only to circumstances where it's clear that the noncitizen parent is out of the picture. And that's really what the board focused on, because if the court were to interpret the provision in the way that the petitioner advocates, it would essentially be recreating the problems that Congress was trying to avoid, particularly with that dual citizenship aspect. Because naturalization is a very significant event that doesn't just grant somebody citizenship in this country. It can have dramatic effects about what's happening with the child in the home country. Right? It can have effects on military service, taxes. It can affect their status in their home country. And Congress was very careful in crafting this to limit the circumstances so they wouldn't be extinguishing the rights of the noncitizen parent. Can you tell me why you think, in the alternative, that Chevron deference is appropriate? I don't think Chevron would be appropriate. I think it would be Skidmore deference, because the board isn't relying on a published decision here. So the board's decision here is unpublished, and it isn't, in turn, relying on a published decision. So Chevron wouldn't be applicable. It would be Skidmore. But so the board assessed this case under plain language reading, and so that's the course that the government is advocating for. But even if the court were to determine that the statute was ambiguous, it seems to me that remand would be an idle and useless formality, at least in this case, because the board has already explained why the government's reading of the statute is really the only reasonable reading of the statute when you take into account what Congress was trying to achieve with this legislation. It pointed out that Petitioner's argument had force in a vacuum, but it didn't take into account the overall broader structure of the statute. That's why I think, I mean, it's one thing to say that the BIA's reading is the better reading. It's another thing to say it's the only reading. Well, it's not the only reading, but in recent years, as certain— Reasonable reading. Yes, Your Honor. Sometimes there are two reasonable readings of text, and one just happens to be better than the other, maybe, as you say, because of the structure and purpose of the provision. Well, I think what the board was getting at here was that, yes, there are two possible meanings, but one of them is reasonable and one of them really isn't. Your Honor pointed this out during the opening presentation. The Petitioner's parents may have been separated and then remarried, but that just makes them married, right? And married couples are considered under the statute under subsection 1. That's really the provision they're supposed to be at. This case is really about Petitioner trying to squeeze his married parents into the single-parent portion of the statute. You know, I thought my question was a pretty decent one, but Mr. Purcell says that subsections 1 and 2 are preceded—are followed by or connected by an or, which means you don't have to go under 1 if you have two parents who are currently married and currently alive. Well, I think that ultimately comes down to how do we assess plain language if there are two different meanings. If there are two different ways to interpret it, does that automatically render us — I'm out of time, Your Honor. May I just finish up? Of course. Finish up. You know, if a statute has two potential meanings, does that mean that it's automatically ambiguous? I think the courts have been recently, particularly in recent years, been saying, no, the obligation of the courts doesn't just simply stop by saying there are two potential readings. The court is supposed to assess the context to see if one of those meanings really makes sense and one of them doesn't. And that's what the Board was getting at here. It really was pointing out that the Petitioner's argument doesn't really make sense when you consider the overall structure of the statute and what Congress was trying to achieve. And that's the reason it ultimately said that the plain meaning was clear and it rejected his argument. Right. So unless the Court has any further questions of the Court, the government would respectfully request that the petition for review be denied. All right. Thank you very much. Thank you. Let's have a few short points. Counsel said that Mr. Turner was trying to squeeze in his married parents into the statute. And I think this ties into Judge Lagoa's point also, which was she talked about the whether what was the evidence regarding whether the parents were remarried. And I think that an important point here in entering Judge Lagoa's question as well as in response to counsel's point is this was anything but a guy with married regular married parents trying to squeeze himself in. The testimony here and it was under-butted and it was accepted was he never saw his father again. Was that the last phrase? Was that he never saw his father again. Got it. He came to the United States in 1990 and never saw his father again. That is not a guy trying to with married parents trying to squeeze himself into a statute. That's a guy who effectively has one parent, which is exactly what the statute is targeting. I don't think, well, I understand your point, but I don't think he was trying to say that the marriage was, the remarriage was entered into to sort of convey derivative citizenship way back when. I think he's talking about litigation strategy now. Thank you. Yeah, I understood that. And then when we talk about context, one of the things we have to look at in context is what's the wording of this provision compared to the surrounding provisions? And we cited the Barrett versus United States case from the Supreme Court, which dealt with a different statute, but also was surrounded by provisions that used phrases like is and then had has been in the provision at issue. And the Court found that significant, and I think it's significant here, too, and I think that's an important context. But the bottom line here is, and I don't think anyone really denies, that the most natural reading of this language is that it includes Mr. Turner. And we can go around and around about what policy might have been in Congress's mind at this point in time or at that point in time, but the Court's mission, first of all, is to interpret statutes according to their plain meaning. And there's no ambiguity here, and I don't think you get past that. I think the first step and the last step in this is, what is the plain meaning of the language? And the plain meaning of the language, Mr. Turner, has derivative citizenship. But can we derive – I'm sorry. I just have – you mentioned the point about purpose and policy. Why can't we glean that purpose from the statutory text, which seems to draw this distinction between married parents and then a parent that is legally separated? Without even resorting to policy arguments, why isn't the purpose gleaned from the statutory text itself? Why? The best evidence of what the purpose was is in the plain language, and the plain language here means what it means. And we start from there and get policy from there and not vice versa. We'd ask the Court to grant the petition, vacate the immigration judge's decision, and remand for dismissal of the notice to appear. Thank you. Thank you both very much. It's been helpful. So we'll wait for your supplemental letter briefs on that opinion letter in a couple of weeks. Thank you. Thank you.